Good morning and welcome to the Ninth Circuit. Before we begin arguments, Judge Gould and I would like to thank Judge Collins for visiting with us from Arizona. It's really a pleasure to be sitting with you, and it's a big help to the court. Thank you. Okay, we have a number of cases submitted on the briefs, and I'll go ahead and do that right now. Sabaitis v. Garland, Lenez v. Garland, and Vasquez v. Garland are all submitted of the briefs as of this day. The first case for argument is Walkingeagle v. Google. Counsel, whenever you're ready. And let me just check with Judge Gould. Are you able to hear us? We can't hear you yet. Yes. How about now? Can you hear me? Yes, now we can hear you. And can you hear us? Yes.  Go ahead. Thank you, Your Honors. May it please the court, Phil Fragetta for the plaintiff appellants. I'd like to reserve three minutes for rebuttal. This case concerns application of Oregon's automatic renewal law and free offer law to YouTube's paid subscription services, YouTube TV, YouTube Music, and YouTube Premium. The automatic renewal law and the free offer law are designed to protect consumers from being enrolled without their consent and knowledge into automatically renewing subscriptions or subscriptions at the end of free trials. The district court made, in our view, an error in determining as a matter of law that the disclosures that YouTube made, which we submit in our papers, are inadequate under the statutes, were adequate and would not mislead a reasonable consumer. On a Rule 12 motion, we think that was simply premature for the district court to do. We note, to begin with, what we call the checkout page. And the best example of that to follow along on is probably page 111 of the record. That's a screenshot of the YouTube TV checkout page. So this page, in our position, violates the ARL in two respects. First, it fails to include material terms that are required by the ARL. So the ARL requires that a business like YouTube disclose in a clear and conspicuous manner a defined set of terms, which include the cancellation policy. If you look at the exhibit or the screenshot reproduced at page 111, you'll note that a material aspect of that policy is missing, that being the seven-day policy. That policy is incorporated in YouTube's terms of service that are applicable to all three named plaintiffs. YouTube argues, and the district court agreed, that that's not a cancellation policy, but a refund policy. The problem with that argument is it simply ignores the text of YouTube's own terms of service. This is not an issue of statutory interpretation. The Oregon law does not define what a cancellation policy is. It's an issue of contractual interpretation. Both terms of service that are referenced in our papers refer to this as a cancellation policy. The May 18 terms of service from 2022 that apply to plaintiffs Walking Eagle and Molina say- What did you think needs to be included in this terms here as far as the right refund? So the statute requires that you disclose, quote, a description of the cancellation policy. Right, and it says cancel any time in your account, no refunds for partial months. Yes, it's excluding the fact that you must cancel within seven days to receive the refund. That is not in there, and yet that's incorporated in the terms of service and called a cancellation policy. Moreover, the other problem, and perhaps the more apt problem, is that- Well, it says if you cancel, you may be charged for the current billing period. So it suggests that sometimes you will be charged a full amount or sometimes you won't. It does say that, but it doesn't specify the seven-day rule. We think seven days is material. Furthermore, though- Seven days from what? From clicking the button to start trial? Yes, for free trials, my understanding is it's seven days from the beginning of the free trial. That's in the June 18 terms of service at paragraph two. And for non-free trials, it would be seven days from the beginning of the subscription. But perhaps more importantly, and what the district court overlooked, the Oregon statute requires that the information be disclosed in visual proximity to the consent to the offer. That's not done here. A hyperlink doesn't suffice. And I'd point the court to Ternier v. Bed Bath & Beyond. It's a district court case from the Southern District of California, cited in our papers, 517 F sub 3rd 1132. And in that case, the court held, interpreting the California ARL, which is substantively identical to the Oregon ARL, that the terms themselves, not the access point to them, must be in visual proximity. A hyperlink does not suffice. Moving on to the clear and conspicuous, that's when I had closer questions on the clear and conspicuous terms. Sure. So moving on to the clear and conspicuous angle, clear and conspicuous is defined in the statute. And it's defined to require, there's a number of a list. One of the rules is that it could set off from the surrounding text of the same size by symbols or other marks. So there's a gray line there, right above all those terms. Why is that not sufficient? Sure. I think that reading fails to incorporate the series qualifier rule, which is a fundamental canon of statutory interpretation. The context of a disclosure is relevant to its clear and conspicuous nature. So YouTube and the district court read the series as an or. If you do one of the three, you're okay. But I don't read it that way. I think you're right on the statutory reading. It has to be set off by surrounding text in a manner that clearly calls attention to the language. So assuming that I agree with you on the statutory interpretation, why does it not fit? Because this gray line doesn't do anything to call attention to the terms below it. There's no bold. There's no heading. There's no contrasting typeface. But the fact that we're even having this discussion on a Rule 12 motion I think highlights the fact the district court's error. For this court or the district court to hold on a Rule 12 motion that a reasonable – I mean, if you look at this page, there's very little writing on it, right? There's maybe, what, 200 words on the whole page, and then the terms are all set aside in a different – it looks differently on the page. I just don't understand why that's not clear and convincing – clear and conspicuous or calls attention to that language. I don't believe it is, Your Honor. It's in smaller type font. There's nothing in here that would indicate that this is going to be an automatic renewing trial. You can imagine a website that maybe would have a bold header that says automatic renewal terms or something of that sort. There's no bold in here even. There's no contrasting typeface. The only colors are hyperlinks. I just don't think this is clear and conspicuous. But, again, I think that that is an issue of fact that is inappropriate at this juncture. I note that our plaintiffs allege that it was not clear and conspicuous to the point that all three of them alleged that they did not know that they were going to get automatically renewed, and then they had difficulty canceling, which is a whole other point of the ARL, which I would like to get to, but I'm going to try and get there. Secondly, you have the free offer law, to move on to that law. That law is, for the most part, similar to the ARL in what it requires, and our arguments are more or less the same when it comes to the checkout page. The one thing I would note is that the free offer law in subsections F and G, 2F and 2G, require that terms with which the consumer must cancel to avoid incurring a financial obligation and the consumer's right to receive a refund need to be disclosed. So I think the seven-day policy is particularly apt for the free offer law and was not disclosed at that point. And, again, we do not believe that the inclusion of a hyperlink is sufficient. This court has been very clear in other contexts and other courts have been clear as well. A maze of hyperlinks is not a sufficient way to disclose information. Counsel, Judge Gould, if I could ask you a question. Yes, absolutely. Where the language says learn more, what would, if the hyperlink says learn more, what would they have learned if they clicked the link? That's not in the record before this court, Your Honor. My plaintiffs understand that they clicked the link and they were unable to figure out how to cancel. That's what all three of them allege. But I don't believe that's in the record about what happens if you click that link. And, again, I think discovery will further bear that out about what happens. I think I asked the question because I hadn't been able to find out what would have happened if they clicked the link. Then why is it not in the record? You didn't make it part of the record from your complaint because your clients, you allege in the complaint that your clients tried to cancel but couldn't do it. That's correct. All three of my clients allege that they tried to cancel and could not do it. Okay, thanks. And I believe that, I'm glad Your Honor brought up that question because it leads me to the cancellation mechanism. The district court held, without reference to anything, that YouTube provided a free and easy-to-use cancellation method. I don't believe that's in the record. Our complaint certainly doesn't say so. Our complaint is – Well, wasn't there an acknowledgment letter? Yes, there was an acknowledgment email. And then it didn't have a cancel on there? The acknowledgment email did have a cancellation button. It did? Or, excuse me, it had a link to something that YouTube purports would be a cancellation button. But, again, there's no evidence – How would that be an easy way to cancel if you click on that link? Well, again, there's no evidence about what happens if you clicked on that link. All three of my plaintiffs say they couldn't figure it out, and their complaint is also – But they also didn't allege they never clicked on the link, right? Well, they couldn't find the link. Did they not receive the acknowledgment email? The email, as we allege in the complaint and through our papers, was not clearly and conspicuously laid out to allow a consumer to find it. And I would note that it's not just my plaintiffs who allege that. Our complaint is littered with consumer complaints of other individuals who say they can't figure out how to cancel YouTube. This is on Paragraphs 30, starting at Paragraph 30 of our complaint and going on and on and on. There are pages, almost five, six pages of consumer complaints of other consumers who say they couldn't figure it out. Is there any allegation of a consumer that clicked on the link on how to cancel subscriptions in the acknowledgment email and they failed to be able to do so? I'm not aware of that being in the record. So why could – I mean if YouTube provides a way to cancel, why shouldn't they be held to following those – that method? The ARL doesn't – well, first, there's nothing in the ARL statutory language that would require you to follow that method. It says that YouTube needs to provide a timely and easy-to-use cancellation mechanism. Plaintiff Molina, for instance, alleges that he was unable to – If he clicked on a link on an acknowledgment email, why isn't that a timely and easy way to cancel? Well, Your Honor, one could imagine a link that would be a timely and easy way to cancel. I can imagine a link that would open up with a big screen that says click here to cancel. I can also imagine a link that would open up to another webpage where you'd have to scroll down to the bottom of the webpage to find the cancellation button. And then even if you could find it, you'd have to click through another four or five prompts before you can cancel. That's not in the record here. It's premature to make this determination. I know. That's the problem. Go ahead, Judge Goldberg. Counsel, I was going to say your time's now used up except for a little under three minutes. Because I expect the appellees to offer some arguments as to why they think the cancellation provision was easy to use, I think maybe you should reserve some time. Yes, I would like to reserve. Okay, thank you. Thank you, Your Honor. May it please the Court, Fred Rowley, Jr., for the YouTube and Google appellees. The District Court properly dismissed plaintiffs' claims under Oregon's automatic renewal and free offer laws. Despite advancing multiple challenges, plaintiffs have failed to identify any statutory deficiency in either YouTube's disclosures, or the checkout pages is what the parties have referred to them as, or its acknowledgement emails. I'd like to start out with a question that was posed by Judge Bumate about the clear and conspicuous requirement. I think the issue of statutory construction has arisen and was debated in the parties' briefs because the plaintiffs took the position in their brief that the mandatory terms, so the four mandated terms, can't be, and I'm quoting from page 37 of their brief, the same size, color, and font as that of the immediately surrounding text. And that would suggest that you can't use one of the enumerated highlighting methods, say bolding or a different color, to apply to two of the mandated terms if they're right next to each other. And our position is simply that can't be right. You have to be able to use the enumerated highlighting methods to apply to more than one of the mandated terms, even if they're adjoining, if that accomplishes the objective of setting them apart. Okay. So now we turn to the YouTube TV checkout page, which, Your Honor, which plaintiffs counseled. Just before you move on, so I think your argument, though, is that the part, the clause of in a matter that clearly calls attention to the language only refers to the last method, the set-off method. Your Honor, we don't think that that issue is dispositive, or we don't think it's really a load-bearing issue. Okay. Because it doesn't substantively change the enumerated methods. We do think that as a matter of statutory construction, it probably applies most clearly to the last one. But it doesn't matter. It doesn't change the substantive meaning of what's required by the statute. As a statutory, I would tend to agree with you if it didn't have a comma after other marks. But that comma seems to suggest that in a matter that clearly calls attention, it goes back to all three prior methods. Yeah, I mean, I think it could go either way. Our position is that it most naturally applies to and modifies the word set-off. But, again, not load-bearing. I do think the more important point is the one that Your Honor indicated when we were talking about the YouTube TV disclosure, because there is a gray line that sets apart these terms. But more importantly, if you take a step back, this is not a disclosure that has a page of text with the mandated terms buried within. This is a disclosure that frames the mandatory terms in a text box with a black border and presents them in a structured format with different sections and with ample spacing. So right out of the gate, you have this disclosure that is set out and framed and focuses on the terms within. The recurring charges and the renewal term, and I'm referring here to the phrase, you know, base plan, free initially, free trial, and then the charges that arise once the promotional plan ends, those are set off in contrasting text. Some of it is bold. Some of it is in plain text, but it's all within that gray box. Then we turn to the paragraph that the plaintiff is focusing on that has the phrase cancel anytime in your account. The continuing or renewing nature of the subscription, which is one of the mandated terms, and the renewal term, which is monthly, those are set off in bold. You will be charged the price above monthly until you cancel. The biggest problem, though, is that it's smaller font than everything else. No, I apologize. It's not in bold, but together with the cancellation policy, it's all in the same font, but it is set off by that gray line. I think you would have a much stronger case if all of that was in larger font than everything else, but it's in smaller font, which I think creates, you know, makes it a much closer question. I do think that's why it is important to take a step back and look at the disclosure as a whole, because it is within this text box. It does have structure and organization. Those terms that are in this paragraph, three of the mandated terms, the one I just read, the one that identifies this as a continuing subscription, the renewal term, and the cancellation policy are all in the same paragraph, and they are separated by that gray line. I would draw a comparison to the disclosure that was at issue in Hall, where the court was evaluating a text box, and I'll just quote from the opinion. The terms, quote, appeared in a text box, highlighted in yellow, with the bolded label Automatic Renewal Notice displayed at the top. So you had a text box that said Automatic Renewal Notice. Within the text box, the terms were in plain font, and they were not differentiated from each other. They were all in plain font. There was one exception. The cancel term was in hyperlink. But all the other terms were in the same font. It did not invalidate that disclosure, and this court found no trouble upholding it. And we think that there's actually more structure and more organization in this disclosure, and therefore it satisfies the ARL. I'd like to turn quick. Yes, Judge Gould? The question I have is, given that the complaint alleged that the plaintiffs had tried to cancel and couldn't figure out how to do it, how do you deal with the argument that the cancellation provision is not easy to use? So, Judge, I turn to the statutory text, because what the ARL requires, it requires two things in the acknowledgment. First, you've got to provide information regarding how to cancel. Second, the business has to provide a toll-free number, an electronic mail address or an e-mail address, a post office address in some instances, and then the key phrase is another cost-effective, timely, and easy-to-use mechanism for cancellation. And the problem here is the plaintiffs don't allege. They don't allege that they or any other consumer tried the method that is provided by the acknowledgment e-mails and that it failed or that it didn't work or that it was hard to follow. All that you see in the complaint, and I would point to paragraph 79 of the complaint, is customer complaints that are general about how hard it is to cancel. And as the district court noted, plaintiffs failed to allege using the cancellation method provided by YouTube in the acknowledgment e-mails. So there's no allegation, well, I tried to go to my account or the settings page, or I tried to use these hyperlinks and it didn't work. And in the absence of those allegations, there are no facts, as required by Iqbal and Twombly and as this Court explained in Winokur, there's simply no facts that establish a plausible basis to infer that this statute has been violated because there's no factual allegations about how the mechanism that YouTube actually offered in the acknowledgment, that that mechanism was not, in fact, timely and easy to use. And the plaintiffs can't simply assume that. They can't just assume that it doesn't work or that it isn't easy to use, nor can they, as they suggest in their opening brief, just require Google, shift the burden, require Google to come forward and point to, quote, evidence concerning every step of the cancellation flow. That's plaintiff's burden to plead, and I would point to the other mechanisms that are illustrated and set out in the statute, e-mail or a telephone number. Those are, by the terms of the statute, permissible means of cancellation. Those methods might also involve multiple steps. If you call a 1-800 number, there may be steps to cancel. If what a plaintiff wanted to do is show that there was a problem with that method, they'd have to plead what happens when you use that method. The same is true here. If you're going to use the statute permits you to use another method, if it's timely and easy to use, on its face, clicking through hyperlinks or going to your settings page just objectively is easy to use, and the plaintiffs have to plead facts to show why. That's not true. So the district court, we believe, got it right when they said that the plaintiff simply didn't meet their burden to challenge this method, and then I'll quote from the court's order, YouTube provides a cost-effective, timely, and easy-to-use mechanism for cancellation through allowing users to cancel anytime by following the hyperlinks. And it's not enough to just say, well, generally, I had trouble trying to do that, or generally, consumers had other sorts of complaints about the method of cancellation. There was a reference in the plaintiff's presentation to the free-offer law, too. The free-offer law has this separate but related requirement that the business has to cancel if the plaintiffs used or made reasonable efforts to use the procedures that are identified for that purpose, and we think the district court got it exactly right when the court concluded that plaintiffs, again, do not allege referring back to the acknowledgment email and following the steps explaining how to cancel. It's the same sort of pleading deficiency that you see with respect to their ARL claim. The plaintiff also opened, my friend opened his presentation by referring to the cancellation requirement, that disclosure requirement, and the idea that it encompasses refunds, but the district court rightly concluded that, and I'll quote here, the ARL's definition of offer terms includes a description of the cancellation policy that applies to the offer, but it does not include a description of refund policies. And that's right. If you look at the plain text of the statute, there are four enumerated terms, and refunds simply aren't one of them. What the plaintiffs say is that the phrase cancellation policy necessarily refers to refunds and in particular to this seven-day refund policy that's in the terms of service. There's both a legal response to that and a factual response. The legal response is that the statute doesn't say refund policies. To the extent that the statute could even apply to refund policies, it would only be given that the statute's purpose and focus is on automatically renewing or continuous subscriptions. What's your response to the argument, well, that this should be governed by Google's contract terms and that because cancellation is tied to refund that they should be disclosed together? What the meaning of the statute is and what cancellation policy means and the mandated terms, that's just a matter of statutory construction. And pointing to the way the terms of service are written, because this is just a general refund policy, it's not specific to continuous or automatically renewing subscriptions, just pointing to that doesn't change the nature of the problem. The more fundamental point is, and the district court recognized this, the statute calls for the disclosure of cancellation policy. And these disclosures say cancel anytime. That is the policy. It's not qualified by the 7-day requirement or the requirement as set out in that policy that the user or consumer not use the service. That's one of the requirements. Cancel anytime is not qualified by that. So I think there's also a factual response. But I go back to the language of the statute, because as the district court noted, the statute requires a description of the cancellation policy, not disclosures of the complete policy. The word description has to be given weight. And when the disclosures say cancel anytime, that is an adequate disclosure of what an adequate description of what the cancellation policy is. And even if it could be construed to apply to some refunds, and I don't think that's the right reading, but even if it could, it would only apply to the payment that continues the subscription service or the payment that renews the subscription service. It would not be. I think Judge Gould has a question. Oh, sorry, Judge Gould. I have a question. Sure. I'll ask Judge Umendade to give you a little extra time if you need it. Of course. Since I'm interjecting here, when your time's short. But was the complaint that was dismissed, was that the initial complaint? It was not, Your Honor. It was the second amended complaint. Was there any issue raised with the district court about leave to file a third amended complaint? I don't know, Your Honor. I don't know whether a request was made for leave to file an amended complaint or there was a reconsideration motion filed. But this is not the initial complaint. The plaintiffs did have the opportunity to replete, and I'm sure that my friend will have a sense of whether they sought some kind of relief from the dismissal order. Okay. Thank you. Just to show up and finish up on the cancellation policy. So to the extent that the statute could even be read to apply to some refund policies, the disclosure addresses them. The disclosure addresses what happens when you try to cancel in the middle of a term, and it addresses the payments that could continue a service or lead to automatic renewal of the service. It says in YouTube Premium, payments won't be refunded for partial billing periods. YouTube TV, it says no refunds for partial months. So there is information in these disclosures about refunds, even to the extent it is required by the phrase cancellation policy, but we think the district court fundamentally got that right. I would like to make one last note about the – We have one second. One second. So this proximity challenge that we heard, that's actually not – that was waived in the opening brief. They didn't – the plaintiffs didn't present that challenge. They did in the district court, but it wasn't renewed. The focus when it comes to consent was on this idea that you needed to have checkboxes next to or near the mandated terms, and the district court properly rejected that challenge as well. Thank you, counsel. Thank you. Thank you. May it please the court. To respond briefly, first to the question Judge Gould had, there was only one decision on a motion to dismiss. There were amendments to the complaint prior, but none of them were in response to a motion to dismiss. The motion to dismiss was granted with prejudice, and we were not given leave to amend, so that's why we appealed the order. Did you request leave to amend? I believe we requested it in the brief, but I'm not certain. Okay. That's not on appeal, though, the denial of leave to amend? Correct. That's why I'm just answering the question. But moving on to the cancellation, I think there's two problems with my adversary's argument. The first is the argument that the plaintiffs did not go through the methodology that you two provided or explained in the complaint is kind of using a sword as a shield. If the plaintiffs allege that they couldn't find the mechanism because it wasn't clearly and conspicuously disclosed, how were they supposed to then use it? Well, you haven't alleged that that wasn't described in the acknowledgment, right? The acknowledgment describes that it was simply hyperlinked, which is insufficient. No. I mean, the statute says another cost-effective, timely, and easy-to-use mechanism for cancellation that must be described in the acknowledgment. Yes. So you haven't alleged that there was not an acknowledgment and that it didn't include a method of cancellation. Hyperlink is not a description, Your Honor. That's the position that we would take, and we think that the Dutcher v. Google case that we cite in our papers supports that. Wait. So you're saying that you agree that there was an acknowledgment, right? I agree there was an acknowledgment set up. And then that acknowledgment had terms on how to cancel, a mechanism. The acknowledgment had a hyperlink. It did not have terms on how to cancel. It had a hyperlink. Okay. It had a mechanism for cancellation. Again, we don't know what that hyperlink would have brought, which brings me to my next point. I'd like to cite into the – and I believe this is cited in our papers – a recent case out of the Western District of Washington, FTC v. Amazon. And there the district court held that, in distinguishing this very case, that, quote, the court did not examine the complexity of the actual cancellation process once the consumer clicked on the link. So this case does not support Amazon's position. I mean, but that's the whole problem. You're not alleging what happens when you click on the link. I don't believe I need to allege that. But finally, if Your Honors do think I need to allege that, I'd note that Paragraph 32, some of the consumer complaints that we've referenced, are consumers. One says, I can't cancel my premium because the button does not work. I have followed the on-site directions. I can't cancel. I have followed these steps, but when I get to the pause or cancel page, I can't scroll down. So there are allegations in there. Okay. Thank you. Counsel. Go ahead. Counsel. Yes. So I have a question. Does your opening brief raise an issue about whether you should have been allowed to amend further? I do not believe that issue is raised in our opening brief, no. We have circuit law saying generally if an issue is not raised in an opening brief, it's waived or forfeited. And so do you have any response to that? I'm not asking Your Honors to give me leave to amend. I'm asking Your Honors to overturn the order and remand the case for further proceedings. Okay. Thank you. Thank you. Thank you, Counsel. This case is submitted.
judges: GOULD, BUMATAY, Collins